IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 14-cv-0877-WJM-MJW

IMPORT FRESH DIRECT, LLC,

     Plaintiff,

v.

PREMIER TRADING, LLC, d/b/a ALLIANCE WHOLESALE,
DIRECT LINE TRANSPORTATION, LLC,
WILLIAM VOGEL, and
ANTHONY FILPI,

     Defendants.

---

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

---

Plaintiff Import Fresh Direct, LLC ("Plaintiff") brings this action against Premier Trading, LLC, doing business as Alliance Wholesale ("Premier"), Direct Line Transportation, LLC ("Direct Line"), William Vogel, and Anthony Filpi (collectively "Defendants") alleging violations of various provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a *et seq.*, and related claims. (ECF No. 1.) This matter is before the Court on Plaintiff's Motion for *Ex Parte* Temporary Restraining Order and for Preliminary Injunction ("Motion for PI") (ECF No. 3) and Plaintiff's Motion to Modify Temporary Restraining Order ("Motion to Modify") (ECF No. 30). For the reasons set forth below, the Motion for PI is granted, the Motion to Modify is granted in part and denied in part, and a preliminary injunction is entered.

# I.  BACKGROUND

Plaintiff is an Indiana company that sells and ships wholesale quantities of perishable agricultural commodities.  (Compl. (ECF No. 1) ¶ 3.)  Defendant Premier is a Colorado company that is licensed to act as a dealer of perishable agricultural commodities, and Defendant Direct Line is a transportation company that shares Premier's office space, telephone lines, and employees, and allegedly comingles assets with Premier.  (*Id.* ¶¶ 4-5.)  Vogel and Filpi are officers and directors of both Premier and Direct Line.  (*Id.* ¶¶ 4, 6-7.)

Between October 14, 2013 and November 4, 2013, Plaintiff sold Premier fresh produce worth $158,628.50.  (*Id.* ¶¶ 12-14.)  Of that amount, several payments were late, and $56,825.00 remains unpaid.  (*Id.* ¶¶ 21-23.)  Each of the outstanding invoices sent by Plaintiff to Defendants contained the following language:

> "WE SHIP F.O.B. GOOD DELIVERY STANDARDS"
> P.A.C.A. TRUST APPLY  The Perishable Agricultural Commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The Seller of these Commodities retains a trust claim over these commodities.[1]  All inventories of food or other products delivered from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(ECF No. 1-4 at 2-10.)

---

[1] The Court notes that 7 U.S.C. 499e(c)(4) uses a comma after the phrase "retains a trust claim over these commodities", while Plaintiff's invoices contain a period after that phrase, resulting in an incomplete final sentence.  However, this typographical error does not change the substance of the notice.

Plaintiff contacted Defendants numerous times between October 2013 and January 2014 to collect the outstanding amounts, but received only partial payment. (Roberts Decl. (ECF No. 7) ¶¶ 33-40; Kislin Decl. (ECF No. 8) ¶¶ 37-42; *see also* Watterson Aff. (ECF No. 34-5) pp. 3-19.)  Plaintiff contends that in December 2013, Defendant Vogel—who Plaintiff understood to be the individual who could authorize payment on behalf of Premier—stated that Premier did not have the funds to pay Plaintiff, and was waiting for funds to come in from other sources to make the payments. (Roberts Decl. ¶ 37; Kislin Decl. ¶ 41.)  However, since these statements were made, Plaintiff has been unable to contact Vogel, and has received no response to a demand letter sent on January 22, 2013.  (Roberts Decl. ¶¶ 39-40.)  Defendants contend that they never stated that Plaintiff would not be paid, and that Plaintiff had previously accepted and acquiesced to receiving late payments.  (Watterson Aff. ¶¶ 4, 6.)

Plaintiff filed this action on March 26, 2014, alleging PACA violations, breach of contract, unjust enrichment, theft, and conversion.  (ECF No. 1.)  Contemporaneous with the filing of the Complaint, Plaintiff filed a Motion for *Ex Parte* Temporary Restraining Order and for Preliminary Injunction.  (ECF No. 3.)  On March 27, 2014, the Court entered a temporary restraining order for a period of fourteen days, and set a hearing on the Motion for PI.  (ECF No. 16.)  On April 6, 2014, Plaintiff filed its Motion to Modify the temporary restraining order.  (ECF No. 30.)  On April 8, 2014, a hearing was held on the Motion for PI.  (ECF No. 36.)  A few hours prior to the hearing, Defendants filed a Response to the Motion for PI.  (ECF No. 34.)

At the hearing, the Court heard argument from counsel and found good cause to extend the temporary restraining order until April 24, 2014.  (ECF No. 36.)  No

3

additional evidence or testimony was presented by either party. (*See id.*) The Court ordered Plaintiff to file a Reply in support of the Motion for PI, ordered Defendants to file a Response to the Motion to Modify, and took the Motion for PI under advisement. (*Id.*) On April 14, 2014, Plaintiff's Reply (ECF No. 37) and Defendants' Response (ECF No. 38) were filed. Both Motions are now fully briefed.[2]

## II. ANALYSIS

### A.    Motion for PI

To prevail on a motion for injunctive relief, the movant must establish that four equitable factors weigh in his favor: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

As noted above, the Court has already granted Plaintiff's request for a temporary restraining order. (ECF No. 16.) In the Court's March 27, 2014 Order, the Court found that, based on the documentary evidence filed by Plaintiff in connection with the Motion for PI, Plaintiff had met its burden with respect to each of the four prongs for injunctive relief. (*Id.*) In Defendant's Response to the Motion for PI, Defendant contends that

---

[2] On April 17, 2014, Plaintiff filed a Motion to Compel Adherence with the Court's Order. (ECF No. 44.) The Motion to Compel will be resolved in a separate order when it has been fully briefed.

Plaintiff has not shown the requisite likelihood of success on the merits of its PACA claims under the first prong of the injunctive relief analysis.  (ECF No. 34.)  Defendant has raised no arguments in its briefing or at the hearing on the Motion for PI with respect to the other three prongs of the injunctive relief analysis.  As to these three prongs, the Court has reviewed its prior reasoning and finds that it is still applicable.  Accordingly, the only issue before the Court on the Motion for PI is whether Plaintiff has established a substantial likelihood of success on the merits of its PACA claims.

Defendants raise three arguments that Plaintiff has failed to show a substantial likelihood of success: (1) Plaintiff waived its PACA rights because it previously acquiesced to receiving late payments; (2) Plaintiff failed to preserve its PACA benefits because it provided inadequate notice to Defendants; and (3) Plaintiff cannot show dissipation of the PACA trust because Defendants have already paid the disputed sum into Plaintiff's trust account.  (ECF No. 34.)  The Court will discuss each argument in turn.

1.   Waiver

Defendants contend that Plaintiff cannot succeed on its PACA claims because it waived its right to assert them by acceding to Defendant's late payments.  (ECF No. 34 at 1-2.)  Defendants cite *American Banana Co. v. Republic National Bank of New York, N.A.*, 362 F.3d 33, 45 (2d Cir. 2004), for the proposition that PACA claims are waived if there is evidence that the parties agreed to extend a payment deadline beyond thirty days after acceptance of the commodities.  (*Id.* at 2.)  Defendants point to e-mails between employees of the parties in which, according to Defendants, Plaintiff "acquiesced to the delayed payments," which constitutes "strong evidence of [a] waiver in writing".  (*Id.*)

Upon reviewing the regulations cited by Plaintiff in its Reply, the Court finds that Defendants' reading of *American Banana* is unpersuasive in light of the 2011 amendments to the federal regulations, which "clarif[y] that the 30-day maximum time period for payment to which a seller can agree and still qualify for coverage under the trust refers to pre-transaction agreements."  76 Fed. Reg. 20,217 (Apr. 12, 2011).  As of April 13, 2011, 7 C.F.R. § 46.46(e)(3) states that a supplier of produce that is otherwise eligible for PACA protection "will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment."  The relevant transactions here occurred in 2013, well after the effective date of the amendment to § 46.46(e)(3).  Plaintiff's alleged acquiescence to partial and late payments occurred after the amount was already past due—not as a "pre-transaction agreement[]" to which the 30-day maximum would apply.  (*See* ECF No. 34 at 2 (citing ECF No. 34-5)); 7 C.F.R. § 46.46(e)(2).

Therefore, Plaintiff's acceptance of late and partial payments from Defendants, when the amounts owing were already past due, did not act as a waiver of its PACA rights.

2.   Notice

Defendants next argue that Plaintiff cannot show it is substantially likely to succeed on the merits because it has not complied with the notice requirements of 7 U.S.C. § 499e(c)(3).  (ECF No. 34 at 2-3.)

Under PACA, a trust is automatically formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full.  *See* 7 C.F.R. § 46.46(c)(1).  In order to preserve its rights under the PACA trust, a seller must give a

buyer notice of its intent to preserve the benefits of the trust.  7 U.S.C. §§ 499e(c)(3)-(4).  Defendants cite the provisions of § 499e(c)(3), which describe a method for an unpaid seller to preserve its trust benefits by providing written notice of such intent within thirty days of the payment deadline.  (ECF No. 34 at 3.)  However, Defendants do not cite the following subsection, which states that "[i]n addition to the method of preserving the benefits of the trust specified in paragraph (3), a [PACA] licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust."  7 U.S.C. § 499e(c)(4).  To utilize this alternative notice method, a licensee must include the language specified in § 499e(c)(4), and must identify the details of the transaction subject to the trust.  *Id.*

Defendant does not contest that Plaintiff is an active PACA licensee.  (*See* ECF No. 1-1.)  Because Plaintiff is a licensee, it may use the alternative method of preserving its PACA trust benefits under § 499e(c)(3) by including the requisite language in its invoices.  It is undisputed that Plaintiff has included such language in the invoices at issue here, which further contained a description of the commodities sold, the prices charged, the date of the transaction, and the identities of the parties.  (*See* ECF Nos. 7-6; 34-3.)  Accordingly, the Court finds that Plaintiff has complied with § 499e(c)(4) to provide the requisite notice under PACA to preserve its trust benefits.

3.    Dissipation

Defendants contend that their compliance with the temporary restraining order, including their transfer of $68,055.89 to Plaintiff's counsel's trust account, demonstrates that no dissipation has occurred, and that therefore Plaintiff cannot show a substantial

7

likelihood of success on the merits of its PACA claims.[3]  (ECF No. 34 at 3.)

"'Dissipation' means any act or failure to act which could result in the diversion of [PACA] trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).  That is, a PACA trustee has dissipated trust assets if he has "in any way encumbered the funds or rendered them less freely available to PACA creditors." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 706 (2d Cir. 2007).

Defendants argue that under *Fresh Western Marketing v. M & L Food Center, Inc.*, 707 F. Supp. 515, 516-17 (S.D. Fla. 1989), evidence that owed funds have been deposited into a trust account is evidence that those funds have not been dissipated.[4] (ECF No. 34 at 3.)  The *Fresh Western* decision does not describe the acts of dissipation that were alleged in that case.  However, it is apparent from the regulatory language that not all forms of dissipation are contradicted by the presence of the owed sum in a trust account.  Plaintiff has alleged here that dissipation occurred in the form of comingling trust assets with funds from Direct Line Transportation, LLC, as well as in

---

[3] The Court finds this argument more applicable to the second prong of the injunctive relief analysis, irreparable injury, than to the first prong.  (*See* ECF No. 16 at 4 (reviewing evidence of dissipation under irreparable injury prong).)  As it does not affect the Court's analysis, the Court will frame the issue as Defendants have and discuss whether it affects the likelihood of success on the merits.

[4] Plaintiff asserts that *Fresh Western* has been essentially abrogated by *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990).  (ECF No. 37 at 6.)  *Frio Ice* held that, contrary to the *Fresh Western* decision, a district court is empowered to order segregation of PACA trust assets in order to enforce payments to trust beneficiaries.  918 F.2d at 158-59. However, it did not touch on the proposition for which Defendants have cited *Fresh Western*, namely, that a lack of dissipation can be demonstrated by the presence of the owed amounts in a trust account.  Regardless, as the Court finds *Fresh Western* distinguishable from the instant case, it need not decide whether *Fresh Western* remains good law.

failing to maintain PACA trust funds and attempting to replenish them with funds from

other sources.  (*See* ECF No. 1 ¶¶ 24-25; Roberts Decl. ¶¶ 35, 37; Kislin Decl. ¶¶ 39,

41.)  The evidence presented by Defendants supports rather than rebuts the inference

that the PACA trust funds were not maintained as "freely available to PACA creditors,"

as it reveals that Defendants sought to compensate for the lack of PACA trust funds by

replacing them with funds from their other businesses.  (*See* Watterson Aff. pp. 7, 14.)

The presence of the requisite amount in a trust account does not exclude the possibility

of dissipation, if the funds in the trust account were garnered from other sources

because Defendants had diverted them and failed to maintain the PACA trust.  *See Six*

*L's Packing Co. v. Beale*, 524 F. App'x 148, 156 n.7 (6th Cir. 2013) (affirming district

court's finding that "any use of trust assets for any purpose, besides re-paying the

seller, can be a dissipation").

Accordingly, on the record before the Court, the evidence shows a likelihood that

dissipation has occurred and may continue to occur in the absence of injunctive relief.

Defendants' compliance with the provisions of the temporary restraining order in

depositing the requisite amount in a trust account does not obviate the possibility of

dissipation, and does not prevent Plaintiff from showing a likelihood of success on the

merits of its PACA claims.

4.    Conclusion on Motion for PI

In the March 27, 2014 Order, the Court found that Plaintiff had shown a

substantial likelihood of success on the merits of its PACA claims.  (ECF No. 16.)  As

discussed above, Defendants have presented no argument or evidence rebutting that

finding, nor have they contested the Court's findings that Plaintiff has satisfied the other

three factors for injunctive relief.  Therefore, the Court finds that Plaintiff has met its burden with respect to all four factors and is entitled to injunctive relief on its PACA claims.

**B.      Motion to Modify**

In the Motion to Modify, Plaintiff seeks to add two additional categories of funds to its request for injunctive relief: (1) attorneys' fees, costs, and interest, and (2) triple damages based on the theft claim.  (ECF Nos. 30 & 31.)

1.      <u>Attorneys' Fees, Costs, and Interest</u>

In Plaintiff's Motion for a PI, it requested an injunction on a sum that, in addition to $56,825.00 in unpaid invoices, included "no less than $7,000.00 in attorneys' fees, costs, and expenses," and "$4,230.89 in unpaid interest as of March 20, 2014".  (ECF No. 5 at 14.)  The Court included those amounts in the quantity of enjoined funds in its March 27, 2014 Order, in addition to the amount of unpaid invoices, for a total of $68,055.89.  (ECF No. 16 at 7-8.)

With respect to interest, Plaintiff included an interest calculation in its Motion for a PI that supported its request for $4,230.89.  (ECF No. 7-7 at 2.)  In the Motion to Modify, Plaintiff calculates the owed interest at $4,628.66.  (ECF No. 31 at 2.)  Defendants' Response does not contest this interest calculation.  (*See* ECF No. 38.)  Accordingly, the Court finds that the enjoined sum should have include an additional $397.77 in interest, and the Motion to Modify is granted as to that amount.

With respect to attorneys' fees and costs, Plaintiff's Motion to Modify includes declarations from Plaintiff's counsel itemizing a total of $16,845.00 in attorneys' fees and $1,869.22 in costs.  (ECF Nos. 32 & 33.)  Plaintiff explains that these amounts do

not include the fees and costs incurred in the drafting of the Motion to Modify, or in attending the hearing on the preliminary injunction, which amount to an estimated additional $11,887.07.  (*Id.* at 3.)  Plaintiff does not offer any additional legal basis for its entitlement to the inclusion of these quantities as PACA trust assets that should be enjoined, relying on the arguments in its original Motion for PI.  (*Id.* at 3.)

In the Motion for PI, Plaintiff presented its reasonable attorneys' fees as "part of the PACA trust, because they have been awarded as 'sums owing in connection with' transactions, which are required to be preserved in the PACA trust itself."  (ECF No. 5 at 14 (citing *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632-33 (11th Cir. 2004); 7 U.S.C. § 499e(c)(2)).)  Plaintiff contended that such fees "can be awarded in a PACA trust action on the basis of an underlying contractual claim."  (*Id.*)  On the strength of Plaintiff's representations, and without Defendants' input, the Court included Plaintiff's estimated $7,000.00 in attorneys' fees and costs in the enjoined sum in its March 27, 2014 Order.  (ECF No. 16 at 7.)

In Response to Plaintiff's Motion to Modify, however, Defendants argue that Plaintiff has failed to make a showing that its attorneys' fees are part of the PACA trust assets here.  (ECF No. 38 at 1-3.)  The Court has reviewed the case law Plaintiff cites in support of its request to include attorneys' fees in the enjoined sum, and finds that Plaintiff has not demonstrated its entitlement to such fees at this stage.  Rather, the case law supports an award of attorneys' fees in PACA cases only in two sets of circumstances: (1) where the underlying contract contains an attorneys' fee provision, and (2) where a PACA claimant's litigation efforts "are directly responsible for the availability of the funds from the statutorily created trust."  *In re Milton Poulos, Inc.*, 947

11

F.2d 1351, 1353 (9th Cir. 1991) (awarding fees where parties' litigation efforts caused

bankruptcy court to "declare[] the trust valid and enforceable."); *see also Middle*

*Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th

Cir. 2002) (holding that contractual claims for attorneys' fees are recoverable under

PACA); *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *7 (D. Colo.

Mar. 20, 2009) ("Where the parties' contracts include a right to attorney's fees, they can

be awarded as 'sums owing in connection with' perishable commodities transactions

under PACA."); *but see E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590,

594 (S.D.N.Y. 1995) ("Attorneys fees are not available under the PACA statute where a

contractual basis for the fees is lacking.").

Because PACA itself does not provide for an award of attorneys' fees in an

ordinary enforcement action, *see* 7 U.S.C. § 499e, Plaintiff must establish an

independent basis for an award of fees in order to show that they are properly

considered part of the PACA trust as "sums owing in connection with" the PACA

transactions.  7 U.S.C. § 499e(c)(2).  On the record before the Court, Plaintiff has failed

to do so.  Plaintiff has provided no evidence that it has a contractual entitlement to

attorneys' fees, nor has it shown that its litigation efforts are directly responsible for the

availability of the trust funds.

The Court finds that the attorneys' fees and costs claimed by Plaintiff should not

be included in the enjoined amount.  Accordingly, the terms of the preliminary injunction

will not include the fees and costs requested in the Motion to Modify, nor will they

include the $7,000.00 originally included in the Court's March 27, 2014 Order for fees

and costs.  Thus, the enjoined amount will be reduced by $7,000.00, but increased by

12

an additional $397.77 in interest, for a total reduction of $6,602.23.

This ruling does not prevent Plaintiff from attempting to make the requisite showing in a motion for attorneys' fees if Plaintiff prevails at the close of this action. However, the Court notes that among the requested amounts in the Motion to Modify, Plaintiff has included numerous instances of fees and costs that are patently unreasonable.  For example, Plaintiff's counsel has billed 10.5 hours of attorneys' fees (amounting to $2,625.00) and $1,232.17 in costs for travel and lodging in Colorado on March 26 and 27, 2014—travel from Florida for a hearing on the Motion for a Temporary Restraining Order that was never calendared and did not occur.  (*See* ECF No. 32-1 at 3-4.)  Given the unreasonableness of counsel's expectation that a hearing would be held the following day, based solely on his request for a hearing, without confirming such expectation with this Court's Chambers, Plaintiff will have great difficulty in showing an entitlement to these fees and costs.

### 2.   Triple Damages

Plaintiff's Motion to Modify also requests the addition of $113,650.00 to the enjoined amount, representing the triple damages award it expects based on its theft claim.  (ECF No. 30 at 1.)  Plaintiff argues that it meets all four factors for injunctive relief with respect to its theft claim under Colorado's stolen property statute, Colo. Rev. Stat. § 18-4-405, and is therefore entitled to triple damages.  (*Id.*)

The Colorado Supreme Court has interpreted § 18-4-405, the "civil theft" stolen property statute, as incorporating the *mens rea* of criminal theft:

> For the stolen property statute to apply, the owner of the property must prove that the taker committed acts constituting at least one of the statutory crimes listed within the statute.  However, the statute itself does

13

not define theft.  Because the stolen property statute is contained in the Colorado Criminal Code, terms contained in that statute may be defined within the scheme of the statutory framework.  The criminal code[, Colo. Rev. Stat. § 18-4-401(1)(a),] defines theft as knowingly obtaining or exercising control over anything of value of another without authorization, or by threat or deception, and intending to deprive the other person permanently of the use or benefit of the thing of value.

*West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006) (citing *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (internal citations, brackets, and ellipses omitted)).  A defendant need not have been criminally convicted of theft for a plaintiff to recover under the stolen property statute.  *Itin*, 17 P.3d at 133.  However, "all of its statutory elements must be proved, including the two culpable mental states: (1) that the defendant knowingly obtained[, retained, or exercised] control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property."  *Id.* at 134 (supplemental bracketed language from Colo. Rev. Stat. § 18-4-401(1)).  The second mental state may alternatively be shown where a party "knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit".  Colo. Rev. Stat. § 18-4-401(1)(b).

In order to meet the first factor for injunctive relief, likelihood of success on the merits, Plaintiff must present evidence that it is substantially likely to be able to prove that Defendants had these mental states in this case.  Plaintiff argues in its Motion to Modify that it has demonstrated evidence meeting the first mental state, because it has shown that Defendants knew of their obligations under PACA but failed to pay the trust assets to Plaintiff, and therefore they knowingly retained those assets without authorization.  (ECF No. 31 at 5.)  The Court agrees that this evidence satisfies the first

14

of the two required mental states.

As to the second mental state, Plaintiff argues that it is demonstrated by Defendants' refusal to maintain the trust or pay Plaintiff without litigation, and refusal to return phone calls with respect to the trust assets.  (*Id.* at 6.)  Plaintiff contends that if Defendants Vogel and Filpi, in their fiduciary roles to Defendants Premier and Direct Line, intended to pay Plaintiff and not to permanently deprive it of the assets, they would have maintained the trust, communicated with Plaintiff, and avoided litigation. (*Id.*)  Alternatively, Plaintiff argues that Defendants' dissipation of the trust supports the inference that Defendants knowingly used the trust assets in such a way as to permanently deprive Plaintiff of them.  (*Id.*)

Plaintiff's arguments fail to satisfy the second required mental state because they do not show that Defendants' intended or knowing deprivation was *permanent*. Plaintiff's evidence—declarations from its Managing Director and Senior Vice President of Sales—shows that Defendant Vogel and another Premier employee said that Premier did not have the funds to pay Plaintiff at the time, but that they expected funds to come in soon, and proposed that they could pay Plaintiff in transportation services from Direct Line or in produce from other suppliers.  (Roberts Decl. (ECF No. 7) ¶¶ 35, 37; Kislin Decl. (ECF No. 8) ¶¶ 39, 41.)  This evidence may show that Defendants mismanaged the trust assets by comingling them with their other business and spending them, but it also shows that Defendants intended to compensate Plaintiff eventually, albeit belatedly or in another form—not that the deprivation of the trust assets was intentionally or knowingly permanent.

Plaintiff also argues that the requisite mental state can be inferred from Defendant Vogel's statement, when Plaintiff brought up the issue of PACA obligations on the phone, "that we would have to sue him to recover our funds." (Roberts Decl. ¶ 38; Kislin Decl. ¶ 42.) Plaintiff suggests that this was a genuine statement of an intent never to pay Plaintiff short of a court judgment. (ECF No. 31 at 6.) The Court finds it more reasonable to interpret this statement as a response from an agitated business owner when litigation is threatened. Given the rest of the evidence before the Court, this statement does not permit a reasonable inference that Defendants intended never to pay Plaintiff. Accordingly, Plaintiff has not shown that Defendants had the intent to permanently deprive Plaintiff of the trust assets, and therefore has not shown a substantial likelihood of success on the theft claim.

As Plaintiff has not satisfied the first of the four factors for injunctive relief on its theft claim, the Court need not discuss the remaining three factors to conclude that Plaintiff has failed to demonstrate that it merits injunctive relief as to the triple damages award. *See Westar Energy*, 552 F.3d at 1224. Accordingly, the Motion to Modify is denied as to the triple damages award.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiff's Motion to Modify Temporary Restraining Order (ECF No. 30) is GRANTED IN PART and DENIED IN PART as set forth herein, and Plaintiff shall return to Defendants the sum of $6,602.23 from its trust account on or before April 30, 2014;

2.      Plaintiff's Motion for *Ex Parte* Temporary Restraining Order and for Preliminary
Injunction (ECF No. 3) is GRANTED as to the sum of $61,453.66, and a
preliminary injunction shall be entered with the following terms:

a.      Defendants Premier Trading, LLC, d/b/a Alliance Wholesale, Direct Line
Transportation, LLC, William Vogel, Anthony Filpi, and their officers,
agents, servants, employees, attorneys, and financial institutions, are all
hereby restrained from dissipating and/or disbursing any and all trust
funds, monies, and/or liquidated interests of any type whatsoever now in
their possession or under their control that are generated by or resulting
from the sale of perishable agricultural commodities, as well as any and
all trust funds and/or monies hereafter received, except for payment in full
to Plaintiff's counsel or into escrow, until the termination of this action.

b.      The sum of $61,453.66, paid by Defendants and held in Plaintiff's
counsel's trust account, shall remain in that account until the termination
of this action, and no withdrawals of any part of that sum shall be made
without Court approval.

c.      On or before April 30, 2014, Defendants shall serve this Order upon any
and all financial institutions with which they have a relationship, or parties
who may be holding assets of the PACA trust.

d.      On or before May 2, 2014, Defendants shall provide Plaintiff's counsel
**and this Court** with a verified and detailed accounting of business
operations, including records concerning Defendants' assets, bank
accounts, accounts receivable, accounts payable, including a list of all

17

PACA Trust Creditors, operating expenses, salary and payroll records, and sales, to the extent that such accounting has not already been provided.

e.      The $61,453.66 in PACA trust assets belonging to Plaintiff and in the possession of Defendants shall serve as Plaintiff's security for purposes of Fed. R. Civ. P. 65(c).  No additional security need be provided.

f.      This Order shall remain in full force and effect until the termination of this action or until further Order of Court.

Dated this 23rd day of April, 2014.

BY THE COURT:

William J. Martinez
United States District Judge

18